[No. 4427.    Decided August 14, 1903.]

FLORENCE O'NEILE, *Appellant,* v. JOHN B. TERNES *et al.,*
*Respondents.*

APPEAL — NOTICE — DESCRIPTION OF JUDGMENT.

When there was but one judgment in a cause, which was actually rendered and announced on the 20th of the month, but not filed until the 21st, a notice of appeal designating the judgment appealed from as one entered on the 20th sufficiently complied with the requirements of Bal. Code, § 6503, as to the necessity of designating "with reasonable certainty from what judgment or orders the appeal is taken."

SAME — STATEMENT OF FACTS — SUFFICIENCY — CERTIFICATE.

The fact that the certificate of the trial judge to a statement of facts bears no date, does not refer to any pages or exhibits or contain any order referring to copies of exhibits would not render it insufficient, when in form and substance it complies with the requirements of Bal. Code, § 5060, by certifying "that the matters and proceedings embodied in this statement are matters and proceedings occurring in this cause and that the same are hereby made a part of the record herein" and "that the same contains

all the material facts, matters and proceedings heretofore oc-
curring in this cause and not already a part of the record
therein."

SAME — INCORPORATION OF DEPOSITIONS AND WRITTEN EVIDENCE.

The failure to attach depositions and other written evidence
to the statement of facts as provided by Bal. Code, § 5059, would
not warrant the striking of such matters from the statement,
where copies had been read and offered in evidence and were
incorporated in the statement as a part thereof, under the certifi-
cate of the judge that they were matters occurring in the cause
and were thereby made a part of the record therein.

SAME — TIME OF SETTLEMENT — PRESUMPTIONS AS TO REGULARITY.

A statement of facts filed after the thirty days allowed by
statute, but within the sixty days additional permitted by Bal.
Code, § 5062, will not be stricken from the files because no order
of the court fixing the time for settling and certifying same is
shown in the record, in the absence of any showing of proposed
amendments to the statement, since, under Id., § 5058, the state-
ment is, in such cases, deemed agreed to and may be certified by
the judge at any time at the instance of either party.

TRIAL — EQUITABLE ACTION — MOTION FOR NONSUIT.

The dismissal of an action of equitable cognizance upon a
motion for nonsuit would not constitute error, although tech-
nically a misnomer of the proper procedure in such cases, if the
evidence of plaintiff showed she was entitled to no relief, and
that a dismissal was warranted.

EXECUTORS — RELATIONS TOWARD LEGATEES — FRAUDULENT PURCHASE
OF LEGACY.

The executor does not sustain such a trust relation to a
legatee under the will as to render fraudulent *per se* the purchase
by him from the legatee of the property acquired under the will,
and only in case of actual fraud could such a sale be set aside.

CORPORATE OFFICERS — DUTIES TO STOCKHOLDERS — SALE OF STOCKS.

The purchase by an officer of a corporation of corporate stock
from a stockholder is not such a transaction as falls within the
trust relations of the parties, as the trust relation of officers and
directors extends only to the corporate business and property of
the company, and not to their private dealings with stockholders.

Appeal from Superior Court, Pierce County.—Hon.
William O. Chapman, Judge. Affirmed.

34-32 WASH.

*Frank H. Graham,* for appellant.

*Fremont Campbell* and *Charles O. Bates,* for respondents.

The opinion of the court was delivered by

ANDERS, J.—This action was brought by Florence O'Neile (appellant) to rescind and set aside a sale of one hundred shares of the capital stock of the Tacoma Carriage & Baggage Transfer Company, a corporation, which were bequeathed to her by John M. Nolan, deceased, and which she sold to Mary Ternes before the same was issued to her, and to have said stock restored and issued to her by said corporation. It appears that at the time this stock was sold by plaintiff the defendant Mary Ternes was the wife of John B. Ternes, and that the defendants John B. Ternes and George B. Kandle were the executors of the last will and testament of the said Stephen M. Nolan, deceased, and that the said John B. Ternes and George B. Kandle and Helen I. Nolan were the administrators of the community estate of said Stephen M. Nolan, deceased, and Helen I. Nolan, his wife. It also appears that at the time of said sale and purchase of said stock the defendant and respondent John B. Ternes was, and still is, an officer of the Tacoma Carriage & Baggage Transfer Company, and the general manager of its business. All of the above named individuals, as well as the said transfer company, were made defendants in the action. After the plaintiff had introduced her evidence and rested, the trial court, on motion of counsel for defendants, dismissed the action at the costs of plaintiff, and from that judgment the plaintiff has appealed.

The respondents move to dismiss the appeal on the alleged ground that it does not appear from the notice of

appeal that the judgment appealed from is the judgment filed and entered in this cause in the superior court. Our statute provides that:

"The appellant in his notice of appeal shall designate with reasonable certainty from what judgment or orders, whether one or more, the appeal is taken, and if from a part of any judgment or order, from what particular part." Bal. Code, § 6503.

The only objection to this notice is that it designates the judgment appealed from as a judgment entered in the action on the 20th day of March, 1902, whereas the judgment in the record was not filed and entered until the 21st day of March, 1902. The fact is the judgment upon its face shows that it was actually rendered and announced on the 20th day of March. And this court has held that a judgment announced by the court is so far complete as to sustain a notice of appeal although it has not been duly signed and entered. *Hays v. Dennis,* 11 Wash. 360 (39 Pac. 658). Moreover, there was only one judgment rendered and entered in this cause, and that was designated not only with reasonable, but absolute, certainty in appellant's notice of appeal. The motion to dismiss the appeal is denied.

The respondents further move this court to strike the statement of facts from the files in this case and affirm the judgment of the lower court, for the alleged reasons (1) that the same was not filed before the service thereof upon the respondents; (2) that the said statement of facts was filed in the superior court eighty-four days after the judgment was entered in the cause, and that at the time of the filing of said statement no order had been obtained or entered extending the time for filing and serving said statement of facts, or application made for an extension of time to file and serve the same; (3) that there is no proper cer-

tificate of the judge of the lower court attached to said
statement of facts; and (4) that no order was ever made or
entered fixing a time for the settlement or certifying of
said statement.    And, in case the motion to strike the
whole of the statement is not granted, the respondents fur-
ther move to strike certain portions thereof, for the reason
that the same are parts of the files and records in the
cause, and should not be made a part of the statement of
facts, and also certain other portions, the same being a
purported copy of the deposition of plaintiff, and copies
of certain exhibits of plaintiff and defendants, for the rea-
son that the original deposition of plaintiff and said orig-
inal exhibits are not sent up to this court on this appeal,
and are not attached to the statement, or referred to in any
way in the certificate of the trial judge, attached to the
statement of facts, or made part of said statement of facts
in said certificate of the trial judge, and no order was ever
made or entered permitting copies thereof to be embodied
in said statement of facts.    It is true, as alleged by the
learned counsel for the respondents, that the certificate of
the trial judge bears no date, does not refer to any pages
or exhibits, or contain any order referring to exhibits or
copies thereof; but it is also true that the form and sub-
stance of the certificate are strictly in accordance with the
requirements of the statute.    Bal. Code, § 5060.    It states
and certifies "that the matters and proceedings embodied
in this statement are matters and proceedings occurring in
this cause and that the same are hereby made a part of the
record herein," and "that the same contains all the ma-
terial facts, matters and proceedings heretofore occurring
in this cause and not already a part of the record therein."
Section 5059 of the Code (Bal.) provides that "deposi-
tions and other written evidence on file shall be appropri-

ately referred to in the proposed bill or statement, and when it is certified the same or copies thereof, if the judge so direct, shall be attached to the bill or statement and shall thereupon become a part thereof." The statement in question does in fact contain purported copies of the "written evidence" in the case, including the deposition and exhibits mentioned in respondents' motion; and the statement itself shows that some, if not all, of the copies of the writings objected to by respondents were expressly permitted by the court, at the trial, to be filed instead of the originals. Moreover, it appears that these written exhibits were mostly read to the court at the time they were introduced in evidence, and it is not claimed or asserted that the copies in the statement are not correct. Under these circumstances we think we ought not to strike from the record or disregard the particular exhibits specified in respondents' motion. They are actually a part of the statement, though not literally "attached" thereto, or referred to by name or number, or by any other designation, in the certificate of the judge; and it would, therefore, seem that the provisions of the statute have been substantially observed in respect to the particular matters under consideration. The objection that the proposed statement of facts was not filed before it was served is not argued or insisted upon in the brief of counsel, and, as a matter of fact, it does not appear to be well taken. It is provided in § 5062, Bal. Code, among other things, that a proposed statement of facts must be filed and served either before or within thirty days after the time begins to run within which an appeal may be taken from the final judgment in the cause, provided, however, that the time therein prescribed may be enlarged either before or after its expiration, once or more, but not for more than sixty days additional in all, by stipu-

lation of the parties, or for good cause shown, and on such terms as may be just, by an order of the court or judge wherein or before whom the cause is pending or was tried, made on notice to the adverse party. In this instance the proposed statement of facts was not served or filed within the thirty days prescribed by the statute, but an application for an extension of the time for sixty days from April 18, 1902, was made to the court, and was heard on notice to the respondents, and granted on the 18th day of June. The application for extension of time and the hearing and determination of the court thereon was made before the expiration of the additional sixty days' time allowed for filing and serving the statement, and the statement was filed and served within the extended time. We find no order in the record fixing a time for settling and certifying the statement of facts. Neither is it shown by the record, or claimed by counsel, that any amendments were ever proposed to the statement within the time limited by law, and in such cases the statement is deemed agreed to, and may be certified by the judge at the instance of either party at any time, on proof being filed of its service, and that no amendments have been proposed. Bal. Code, § 5058. As we have seen, the statement was certified in the manner prescribed by law, and, there being no showing to the contrary, it must be presumed that the action of the court was warranted by the facts before it; or, in other words, that the trial judge did his duty in the premises. The motion to strike the statement as a whole, as well as the motion to strike parts thereof, is denied.

It is conceded by all the parties to this action that the capital stock of the respondent corporation is $40,000, consisting of 2,000 shares of the par value of $20 per share; that Stephen M. Nolan died on or about August

10, 1899, and that at the time of his death he and Helen I. Nolan, his wife, were the owners of 1,911 shares of said corporation stock; that said stock was appraised by the appraisers appointed by the superior court of Pierce county in the matter of the estate of Stephen M. Nolan, deceased, at $4.75 per share, and that 100 shares thereof were bequeathed to appellant by the will of said decedent; that the respondents John B. Ternes and George B. Kandle were named and appointed in said will as the executors thereof, and that they duly qualified and assumed the duties of such executors; that while acting as such executor the said John B. Ternes purchased for his wife, Mary Ternes, one of the respondents, from appellant, the 100 shares of stock given her by said Nolan, deceased, and paid appellant therefor the sum of $1,000, and that all the right, title, and interest of appellant in and to said stock was transferred by her to the said Mary Ternes by a bill of sale duly executed and acknowledged, and which authorized and directed the respondent, The Tacoma Carriage & Baggage Transfer Company, to issue and deliver said stock to the respondent Mary Ternes. It is also conceded that the decedent, Nolan, gave 100 shares of this transfer company stock to the respondent John B. Ternes, 200 shares to Mrs. Erickson, 300 shares to Mrs. Heffner, and that the residue thereof was given to the executors, Ternes and Kandle, in trust for one Corinne Brazell. The 1,911 shares of stock which was issued to Stephen M. Nolan, and which stood in his name on the books of the transfer company at the time of his death, being community property, only one-half thereof was subject to his testamentary disposition. The other half belonged, under the law, to Mrs. Nolan. It appears that some time after appellant had sold her stock as above indicated, she ascertained that if she were still the owner, she could sell it for

a higher price than that which she received from Mr. Ternes. She then concluded to rescind her sale, and accordingly notified Mr. and Mrs. Ternes of her desire and intention, and offered to return to them the amount she had received. Her desire to rescind the sale was disregarded, and her offer to return the money paid to her, with interest, rejected. She thereupon instituted this suit for a rescission, alleging, in substance and effect, in her complaint, among other things, that at the time she made the sale she was ignorant of the value of her stock, which was in fact of much greater value than the sum she received for it; that Mr. Ternes, by reason of his position of vice-president and general manager of the transfer company, had full knowledge of the value of the stock, but fraudulently withheld the same from her, and that she was induced to sell her stock for $1,000 by certain (stated) false and fraudulent representations and concealments of Ternes as to the then condition of the company, and by his false statements that there were no dividends from said stock, and could be no dividends for a long time to come, and by concealing the fact that dividends had been declared; that on discovering the fraud which had been practiced upon her she caused notices of rescission of said sale and transfer of stock to be prepared and served upon the judge of the superior court and the several defendants (naming them), and that at the time of service of such notices she tendered to John B. Ternes and Mary Ternes the sum of $1,000 in lawful money, and the further sum of $12.50 as interest thereon, and demanded a return of the contract and sale of stock, but they and each of them refused said tender, and refused to give up or return the contract of sale and transfer, and that she now renews said tender and demand, and

deposits in court the full amount received by her from Ternes, and rescinds and repudiates her contract and transfer of stock so obtained from her by said Ternes. The trial court, after hearing the testimony of the plaintiff and other evidence produced by her, concluded that the evidence failed to prove the allegations of the complaint—or, in other words, the cause of action alleged—and hence, as we have said, dismissed the complaint.

It is insisted by the learned counsel for appellant that the action was dismissed upon a motion for a nonsuit, and that such a motion is only applicable to cases at law tried by a jury, and, for that reason, if for no other, it was error to grant it. Conceding that the motion for a nonsuit, provided for by our statute, may not be strictly applicable to a purely equitable action, it by no means follows that the court may not, in a proper case, dismiss a complaint or proceeding in equity on motion of the defendant. If the allegations of the complaint and the evidence adduced on the part of the plaintiff are such as to require countervailing or explanatory evidence on the part of the defendant, in order to defeat the action, then the latter should be compelled to produce such evidence, and a motion to dismiss, by whatever name it may be designated, should be denied. But where the evidence of the plaintiff plainly shows that he is entitled to no relief, the action may properly be dismissed, even on the court's own motion. In this instance the motion, as recited in the judgment, was "for judgment dismissing the said action, for the reason that the testimony offered upon the part of the plaintiff was insufficient to grant the plaintiff any relief in this action," and it would seem that it was at least a proper one for the consideration of the court. It is contended on behalf of the appellant that the court below, in granting this

motion, entirely misconceived the nature and character of this action, and proceeded solely upon the theory that this was an action to rescind a sale of personalty on account of false and fraudulent representations on the part of the vendee, and consequently concluded that the burden was upon the appellant to prove the fraud alleged. And it is asserted in appellant's brief that:

"The complaint in this action does not state a good and sufficient cause of action of that character. It was never so intended, any more than it was intended to state a good cause of action in trover or conversion. The gist of the cause of action under consideration is misuse of position and opportunity by an executor of an estate, by the president of a company, by a person acting in a fiduciary relation toward plaintiff—in other words, a trustee; and the claim to relief is based upon a betrayal of confidence and a violation of trust duties and obligations, coupled with fraud and false representations. The fraud and false representations count principally as makeweights to render the explanation which the trustee is bound, under the legal principles which govern this case, to make the court of equity having the case under consideration, simply more impossible."

We have no doubt that there is, in legal contemplation as well as in reason, a clear distinction between the two classes of cases mentioned by appellant's counsel as to the nature and quality of the proof required on the part of the plaintiff. If the action is an ordinary one by a person in his individual capacity, based on actual fraud, no recovery can be had without satisfactory proof of the fraud alleged. But if it is an action by a *cestui que trust* against his trustee, the former may, in some cases, recover by simply showing a transaction on the part of the latter indicating a mere failure to perform a duty or obligation resulting from his trust, although no actual fraud was prac-

ticed or intended. And while there is no rule of law pro-
hibiting an ordinary trustee from purchasing from a *ces-
tui que trust* the latter's interest in the trust estate, yet, if
he does so, "the burden is on him to show a full, fair, and
sufficient consideration, and it must appear that the *cestui*
had power to sell, and had the fullest information con-
cerning the transaction." 27 Am. & Eng. Enc. Law, 213,
and cases cited. And if it appears that such informa-
tion was not given, and that the consideration was insuf-
ficient, the sale will be set aside at the suit of the bene-
ficiary. Lewin, Trusts (Scott's Am. ed.),* p. 484. A
trustee whose duty it is to sell merely may not purchase
trust property either personally or by his agent, at his
own sale, for the obvious reason that in such a case he
would be at the same time both seller and buyer. Id., p.
*487.

We come now to the consideration of the crucial ques-
tion in the case, and that is whether, in view of the evi-
dence and the principles of law applicable to cases of this
character, the judgment can be sustained either on the the-
ory apparently adopted by the trial court or that urged as
the real and legitimate one by counsel for the appellant.
It is not practicable to set forth all the evidence in the
record, or even to present a satisfactory synopsis of it in
this opinion, and we will therefore content ourselves by
simply saying that upon the whole case as made by the
pleadings and the evidence we are clearly of the opinion
that the judgment ought to be affirmed. If appellant's
right of action is in fact based upon the alleged fraudulent
representations made to her by Ternes, the judgment is
clearly right for the reason that she frankly and positively
testified, as a witness in her own behalf, that all he
(Ternes) told her was by letter, and that she *did not rely*

*on his statements and representations;* that she did not believe what he had told her; that she knew her stock was worth more than she was getting for it, and that she sold it because she wanted to get something out of it. The evidence further shows that the appellant, at her home in California, wrote to Mr. Ternes, saying that she had been offered $1,000 for her stock, and that, if he wanted it at that price, he could have it; and that he thereafter went there, paid for the stock, and took a bill of sale of it in the name of his wife, Mary Ternes. The testimony of the appellant herself certainly does not entitle her to relief on the ground of willful or (if we may use the term) active fraud on the part of respondent Ternes. Nor is she entitled to relief by reason of "a betrayal of confidence and a violation of trust duties and obligations" by Mr. Ternes. If the respondent Ternes was appellant's trustee, he became such, not by her own act or appointment, but because he was one of the executors of Nolan's will, or because he was an officer of the respondent corporation, and a stockholder therein. And the question arises, what duty or obligation did he owe appellant, pertaining to either of those positions, which he failed to perform? As an executor, it was his duty to collect the assets, pay the debts of the decedent, and the funeral and other necessary expenses, and distribute the residue of the estate in accordance with the will of his testator. In short, it was his duty to take possession of, settle, and distribute the estate; all of which it appears was done with the approval of the court. All that appellant had a right to require at the hands of the executors, or either of them, so far as these shares of stock are concerned, was the delivery of the stock to her or her assigns at the time the estate was settled. This stock was a specific legacy to appellant by the terms

of the will. She had the right to sell it to whomsoever she pleased, and Mr. Ternes had the right to purchase it for his wife, or even for himself. Schouler, Executors (3d ed.), § 358. Mrs. O'Neile received her own price for it, which was more than twice the appraised value, and the evidence does not show that it was actually worth more at the time of the sale. It is true that some other parties afterwards offered to give her $1,500 for her stock if she would rescind her sale to Ternes and sell to them, but that was done with the expectation of thereby getting a controlling interest in the corporation. And it seems now that that offer was the real cause of this suit.

As to the contention that the respondent Ternes violated his trust duties and obligations as an officer of the transfer company by not apprising appellant of the true condition of the company and its business, and of the value of its stock, it is perhaps sufficient merely to observe that no such trust relation as is claimed by appellant ever existed between the latter and Mr. Ternes. The rule recognized and adopted by the modern authorities is tersely stated by a late text-writer, speaking of officers of private corporations, as follows:

"The doctrine that officers and directors are trustees of the stockholders applies only in respect to their acts relating to the property or business of the corporation. It does not extend to their private dealings with stockholders or others, though in such dealings they take advantage of knowledge gained through their official position." See 21 Am. & Eng. Enc. Law (2d ed.), 898, and cases cited. See, also, *Carpenter v. Danforth,* 52 Barb. 581.

We find no error in the record, and the judgment is therefore affirmed.

FULLERTON, C. J., and MOUNT and DUNBAR, JJ., concur.